UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

ENRIQUE ALVEAR,

      Plaintiff,

vs.

DUCK DONUTS HOLDINGS, LLC,
d/b/a DUCK DONUTS, a Florida
limited liability company,

      Defendant.

_____/

## COMPLAINT

Plaintiff ENRIQUE ALVEAR, through undersigned counsel, sues Defendant

DUCK DONUTS HOLDINGS, LLC, d/b/a DUCK DONUTS, a Florida limited

liability company, and alleges as follows:

1.     This is an action for declaratory and injunctive relief, attorney's fees,

costs, and litigation expenses for unlawful disability discrimination in violation of

Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"),

as amended, and 28 C.F.R. Part 36. This is also an action for declaratory and

injunctive relief to prevent the continuing act of trespass against the Plaintiff's

personal property (his personal computer and its hard drive), and for compensatory

damages to Plaintiff for such trespass. Remedies provided under common law for

1

trespass are not exclusive and may be sought in connection with suits brought under the ADA.

2.     This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202. In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3.     Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Middle District of Florida.

4.     Plaintiff ENRIQUE ALVEAR is a resident of Volusia County, Florida, is sui juris, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Plaintiff resides at 1200 Belville Road, #118, Daytona Beach, Florida.

5.     Plaintiff is and at all relevant times has been a blind and visually disabled person who has been diagnosed as having retinal detachment to both eyes. Because of his condition, Plaintiff is blind and is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C.

2

§3602(h). Plaintiff also is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6.      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'...Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his

keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. Dec. 21, 2017).

7. Defendant is a Florida limited liability company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls a chain of restaurants nationwide, either directly or through franchise agreements, selling food and beverage products, including the restaurant Plaintiff intended to patronize in the near future (and as early as March or April 2026), including the restaurant located at 1405 Cornerstone Boulevard, Daytona Beach, Florida. The location of this restaurant is approximately 7 miles from Plaintiff's home in Daytona Beach.

8. Plaintiff's blindness limits him in the performance of major life activities, including seeing, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend company websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of restaurants, either directly or through

4

franchise agreements, under the name "Duck Donuts". Each "Duck Donuts" restaurant is open to the public. As the owner, operator, and/or controller of these restaurants, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns, operates, and/or controls, "a restaurant, bar, or other establishment serving food or drink", per 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

11.    Because Defendant is a restaurant open to the public, each of Defendant's physical restaurants is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182 and §12181(7)(B), and the ADA's implementing regulations, 28 C.F.R. Part 36.

12.    Defendant also owns, controls, maintains, and/or operates an adjunct website, https://www.duckdonuts.com (the "Website"). One of the functions of the Website is to provide the public information on the locations of Defendant's physical restaurants. Defendant also sells to the public its food and beverage products through the Website, which acts as a critical point of sale and ordering for Defendant's food and beverage products that are made in and also available for ordering and purchase in, from, and through Defendant's physical restaurants. In addition, the Website allows users to arrange in-restaurant pickup and from-restaurant delivery of Defendant's food and beverage products, purchase physical and electronic gift cards for use online and in the physical restaurants, submit an electronic contact form to

5

get in contact with and/or be contacted by the physical restaurants, and sign up for a website account to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical restaurants.

13.    The Website also services Defendant's physical restaurants by providing information on available food and beverage products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.    Because the Website allows the public the ability to secure information about the locations of Defendant's physical restaurants, order and purchase food and beverage products also available for ordering and purchase in, from, and through the physical restaurants, arrange in-restaurant pickup and from-restaurant delivery of Defendant's food and beverage products, purchase physical and electronic gift cards for use online and in the physical restaurants, submit an electronic contact form to get in contact with and/or be contacted by the physical restaurants, and sign up for a website account to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical restaurants, the Website has a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical restaurants, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an

6

extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses.

15. Because the public can order and purchase Defendant's food and beverage products through the Website that are also offered for sale in, from, and through Defendant's physical restaurants, thus having the Website act as a critical point of sale and ordering for Defendant's food and beverage products that are made in and also sold in, from, and through the physical restaurants, arrange in-restaurant pickup and from-restaurant delivery of Defendant's food and beverage products, purchase physical and electronic gift cards for use online and in the physical restaurants, submit an electronic contact form to get in contact with and/or be contacted by the physical restaurants, and sign up for a website account to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical restaurants, the Website is an extension of, and gateway to the physical restaurants, which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(B). As such, the Website is a necessary service, privilege, and advantage of Defendant's brick-and-mortar restaurants that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical restaurants.

7

16.    At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Website. Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar restaurants that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical restaurants. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.    Because he is blind, Plaintiff does not drive.  As a result, he and his wife, who also does not drive, rely on others such as family, friends, public buses, and ride share services to travel in and throughout the Volusia County area where they reside to do their shopping and to visit and dine in restaurants.  Plaintiff also relies on the availability of retail store and restaurant websites to enable him to obtain information about the physical locations to help plan his visits, and to view merchandise or food and beverages being offered for delivery from or pick up in the physical restaurants. In addition, the Website allows Plaintiff the convenience to shop, order, and purchase food and beverage products online, which are also offered

8

for sale and made in the physical restaurants, for either delivery to his home or pickup at the physical restaurants.

18.     Plaintiff, who has been and intends to continue to be a customer of Defendant, visited Defendant's Website on January 15, 2026, with the intent to pre-shop Defendant's food and beverage offerings and to make a purchase of Defendant's available food and beverages made in the physical restaurant, which can be picked up by Plaintiff at the physical restaurant or be delivered directly to him. Plaintiff plans to return to and use Defendant's Website as early as March and April 2026, and during the months thereafter, for the purposes of reviewing Defendant's available food and beverage products and pricing, and ordering and purchasing Defendant's food and beverages made in the physical restaurant for in-restaurant pickup or from-restaurant delivery. Plaintiff also plans to visit Defendant's physical Daytona Beach location, probably as early March and April 2026, at which time he will be driven to the location to visit the area and patronize and dine in the physical restaurant.  Indeed, Plaintiff regularly travels in the vicinity of Defendant's Daytona Beach restaurant as he has visited and shopped, and in the past has frequently visited and shopped (ten or more times), other stores and restaurants located in the area where Defendant's restaurant is located, such as 4 Rivers Smokehouse and the Volusia Mall, as they are convenient to him due to their close proximity to his home. Plaintiff thus would immediately return to both the

9

Website and Defendant's Daytona Beach physical location but for the accessibility barriers described hereinbelow. Plaintiff's intent to return to both the Website and the physical restaurant, and to patronize the restaurant through access and use of the Website, thus is concrete, specific, and ongoing, and Defendant's failure to maintain an accessible Website creates a real and immediate threat of future discrimination to Plaintiff and other blind and visually disabled persons, such as he, who use screen reader software to access websites and communicate with physical restaurant locations.

19.    Plaintiff also intends to continue to monitor the Website in March and April 2026, as well as in the following months, in his capacity as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

20.    The opportunity to shop and pre-shop Defendant's food and beverage products, arrange in-restaurant pickup and from-restaurant delivery of Defendant's food and beverage products, purchase physical and electronic gift cards for use online and in the physical restaurants, submit an electronic contact form to get in contact with and/or be contacted by the physical restaurants, and sign up for a website account to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical restaurants from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind

10

individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

21.    Like many consumers, Plaintiff accesses a number of websites at a time to help plan his restaurant visits and to compare food and beverage products, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

22.    Beginning on January 15, 2026, Plaintiff, intending to make a purchase of Defendant's food and beverage products made in its Daytona Beach restaurant for delivery to his nearby home or for pickup from the physical restaurant, attempted on a number of occasions to utilize the Website. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons, such as he, who use screen reader software to access and navigate company websites.

23.    Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with company websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These access barriers, which are severe and pervasive,

11

specifically prevented Plaintiff from fully and effectively accessing and navigating the Website and, as confirmed by Plaintiff's expert (with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA), include the following:

a)      Level A Guideline 1.3.1 – Info and Relationships (Information, structure, and relationships conveyed through presentation can be programmatically determined or are also available in text) – On the gift card page, gift card design options that are not clearly communicated to the screen reader user. After the carousel heading is announced, focus moves only to the "Previous" and "Next" buttons for the design carousel. Both buttons are announced with the same label of "go to (previous/next) gift card design image slider eGift card image with the Duck Donuts logo", regardless of which design is actually previous or next in the carousel. These buttons can be activated to visually scroll through the design options, and whichever image becomes centered in the carousel becomes the selected design. However, no announcement is made to indicate to the screen reader user that a change has occurred when either button is selected. The design images themselves never receive focus, arrow key navigation does not move into the carousel content, and there is no way to navigate to or hear the text or imagery shown on the card. Based on how the controls are announced, the screen reader user may reasonably believe that all design options display the same Duck Donuts logo, even though

multiple distinct designs are available. As a result, the screen reader user can change the selected design but have no way to determine which design is currently selected or what content appears on the card.

b)   Level A Guideline 1.3.2 – Meaningful Sequence (Content is presented in a meaningful order) – An inaccessible "Nutrition & Allergen" PDF. When navigating through the PDF with the arrow keys, table content is not announced in a structured or meaningful way. Column headers are not identified and each row of data is announced as a single line of text. As a result, individual values are not associated with their corresponding columns, thus preventing the screen reader user from accurately reading or understanding the information provided.

c)   Level A Guideline 2.1.1 – Keyboard (website must be accessible by keyboard only (no mouse or other pointing device)) – Navigation submenus that are inaccessible. Three collapsed navigation buttons are present in the navigation region. Two of these buttons are announced as "links" with no indication provided that submenu content is available. Selecting them automatically opens a new webpage instead of the submenu, thus making the submenu options accessible only to mouse users (i.e., not the screen reader user). The third collapsed button is announced as a "button", indicating that additional content is available. However, activating it with the enter key or space bar does not expand the submenu or open a new webpage. As

13

a result, the submenu content for all three navigation buttons is inaccessible to the screen reader user.

d)      Level A Guideline 2.4.3 - Focus Order (website provides focus in a logical order that preserves meaning and operability) – On the "International Franchising" page, an inaccessible "Common Questions" section. None of the expandable question buttons receive focus when navigating the page with the tab key. As a result, the screen reader user does not hear any of the common questions announced and cannot expand or access their associated answers. Focus moves only to one hidden link embedded in the first collapsed answer of the section before jumping directly to the next section below.

e)      Level A Guideline 2.4.3 - Focus Order (2) (website provides focus in a logical order that preserves meaning and operability) – When displayed, a "Choose Your Order Type" pop-up that does not receive announcement nor focus. When a menu item is selected on the "Menu" page, a "Choose Your Order Type" pop-up appears and visually covers the main content of the underlying page. However, focus remains on the underlying page instead of moving into the pop-up. The screen reader user must continue tabbing through the remaining page content, footer, back to the toolbar, and then through the navigation region before the pop-up finally comes into focus. Until focus reaches this pop-up, the screen reader user cannot choose an order type, select a store, or continue with the ordering process.

14

f) Level A Guideline 2.4.3 - Focus Order (3) (website provides focus in a logical order that preserves meaning and operability) – When items are added to the cart, the lack of any verbal notification to inform the screen reader user that such an action occurred. Further, the cart is not accessible as expected on the catering page. When the "Add to Cart" (+) button for an item is selected, a customization dialog gets displayed and selections can be made. After selecting the "Add Item" button on this dialog, focus returns to the same "Add to Cart" (+) button on the menu page. At the same time, the item is visually added to the "Your Order" section on the right side of the page, where a "Checkout" button becomes visible. However, no verbal confirmation is announced to indicate to the screen reader user that the item was successfully added or that a "Checkout" button is now available. Instead, the screen reader software announces, "Out of region dialog clickable", followed by the same "Add to Cart" (+) button again, which is then followed by focus moving through the remaining menu items on the page. The screen reader user must tab through the remaining menu items before the "Your Order" section and "Checkout" button comes into focus. As a result, the screen reader user is not notified when an item has been added to the cart and cannot immediately access the "Checkout" button.

g) Level A Guideline 2.4.3 - Focus Order (4) (website provides focus in a logical order that preserves meaning and operability) – When a menu item is selected on the online ordering page, an item customization pop-up that, although it gets

15

displayed, does not receive announcement nor focus. Instead, focus remains on the underlying page. The screen reader user must tab through all remaining page content and footer links, return to the toolbar, and navigate through the navigation region again before the pop-up finally comes into focus.

h)      Level A Guideline 2.4.3 - Focus Order (5) (website provides focus in a logical order that preserves meaning and operability) – On the item customization pop-up, the presence of unlabeled and inaccessible elements. Once focus finally moves into the pop-up, the "Close" button receives focus first but is announced only as "button", thus providing no indication of its purpose. Additionally, the "Quantity" buttons for the item do not receive focus at all. Instead, focus moves directly from the unlabeled "Close" button to the "Add to Order" button, thus bypassing the "Quantity" buttons entirely. As a result, the screen reader user cannot adjust the item quantity and is limited to adding only a single item to the cart at this point.

i)      Level A Guideline 2.4.3 - Focus Order (6) (website provides focus in a logical order that preserves meaning and operability) – On the gift card page, inaccessible "Send Now" and "Send Later" buttons. The "Send Now" button is preselected by default; however, both buttons are skipped over entirely when navigating the page with the tab key. As a result, the screen reader user does not have the ability to select the "Send Later" button or schedule a future delivery date.

16

j)      Level A Guideline 3.3.1 – Error Identification (Input errors are clearly identified) – On the account sign-up page, the lack of announcement for error notifications. When the "Submit" button is selected before required fields are completed, error messages get visually displayed below the "Submit" button, but nothing is announced by the screen reader software to indicate that an error occurred. Focus does not automatically move to the error messages nor return to any of the invalid fields. Instead, pressing the tab key moves focus past the error messages to the "Sign In" link and then continues down the page. As a result, the screen reader user has no idea that error messages are present or that arrow key navigation is required to locate them.

k)      Level A Guideline 3.3.1 - Error Identification (2) (Input errors are clearly identified) – On the checkout page, the lack of announcement for error notifications. When the "Place Order" button is selected with required fields left incomplete, an error message gets displayed in a dialog at the bottom of the screen and the first invalid field gets visually highlighted in red. The page also scrolls to show this field. However, nothing is announced by the screen reader software to indicate that an error has occurred. With the next tab key press, focus moves into the footer, and the error dialog disappears. When the screen reader user navigates back to the invalid field, it is announced the same way as before, with no indication provided that an error is present. The only remaining indication of the error is a red

17

outline, which is not conveyed to the screen reader user. As a result, the screen reader user is never informed that submission failed and thus has no way of identifying invalid fields.

l)      Level A Guideline 4.1.2 - Name, Role, Value (All interactive elements are labeled with a descriptive name, role, and current value) – The presence of unlabeled elements in the navigation region and footer. The homepage link in both locations is announced only as "logo unlabeled graphic link", which does not convey its purpose or destination. Additionally, immediately after this unlabeled homepage link is announced in the footer, the screen reader user hears three consecutive announcements of only "duckdonuts link" with no additional context provided. These repeated announcements do not adequately indicate to the screen reader user what each link represents or what content it will open.

m)      Level A Guideline 4.1.2 - Name, Role, Value (2) (All interactive elements are labeled with a descriptive name, role, and current value) – On the cart pop-up, the presence of unlabeled buttons. The "Cart" button itself is announced only as the current cart quantity followed by the word "button" (i.e., "1 button"), which does not adequately convey to the screen reader user its purpose. When the cart pop-up is opened, the "Close" button at the top of the dialog is skipped over entirely and never receives focus. The first element to receive focus is an unlabeled button announced only as "pen icon graphic button", which is used to edit the pickup

18

time and location. As focus moves through the cart contents, both the "Remove" and "Increase Quantity" buttons for each item are announced with the same label of "add item graphic button." Announcements made in this way may result in the unintended removal of items from the cart, as the "Remove" control is incorrectly announced as an "add" button. Additionally, in the final section of the pop-up where additional items are suggested, each "Add" button receives focus but is announced only as "add button" with no associated product name provided. As a result, the screen reader user cannot determine which products would be added when activating these buttons.

n)      Level A Guideline 4.1.3 – Status Messages (If a status message is presented and focus is not set to that message then the message must be announced to screen reader users) – When an item is added to the cart, the lack of any verbal notification to indicate to the screen reader user that such an action occurred. Further, the cart is not accessible as expected on the online ordering page. After an item is added to the cart, the screen reader user is returned to the main menu page. The cart quantity updates visually in the navigation region, and a confirmation message gets displayed at the bottom of the screen. However, nothing is announced by the screen reader software here to confirm that the item was successfully added. Then, with the next tab key press, focus moves to the top of the main content region, just past the "Cart" button. To reach the cart and verify that the item was added or continue with

19

the checkout process, the screen reader user must either navigate backward using "Shift+Tab" or tab through the entire page content and footer before returning to the navigation region and encountering the "Cart" button again. As a result, the screen reader user is not informed when items are successfully added to the cart and cannot access the cart contents as expected.

24.    Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Website. Although the Website appeared to have an "accessibility" statement linked from, and buried at the bottom of, its home page as well as a third-party provided (i.e., "UserWay") "accessibility" widget/plugin installed, that "accessibility" statement and "accessibility" widget/plugin, when activated and tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the "accessibility" widget/plugin to enable him to equally, quickly, fully, and effectively navigate the Website.

25.    The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same dining experience, with the same access to the food and beverage products, sales, services, discounts, and promotions, as provided at the Website and in the physical restaurants as the non-visually disabled public.

26.    Plaintiff desires and intends, specifically as early as March and April 2026, to patronize Defendant's physical Daytona Beach restaurant and to use the Website to access Defendant's goods and services available in and through the physical restaurant, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his blindness and the Website's access barriers. In addition, as a tester using screen reader software, Plaintiff is unable to fully and equally access, navigate, and communicate with Defendant through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.    Because of the nexus between Defendant's physical restaurants and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's physical restaurants for its operation and use, the Website is an

21

intangible service, privilege, and advantage of Defendant's brick-and-mortar restaurants that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to, and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical restaurants, which are places of public accommodation subject to the requirements of the ADA.

28.    On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.    On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of the Website by individuals with disabilities.

30.    On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31.    On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

22

32.    On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33.    On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.    On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.    Defendant has not created and instituted a useful and effective Specialized Customer Assistance line, service, or email contact mode for customer assistance for the visually disabled.

36.    Defendant has not created and instituted on the Website a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled and/or blind communities.

37.    The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.1 or higher versions of web accessibility.

38.    Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of ordering and purchasing Defendant's

food and beverage products offered on the Website and in the physical restaurants from their homes.

39.    Defendant thus has not provided full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and the physical restaurants in contravention of the ADA.

40.    Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities, such as Plaintiff.

41.    The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites, such as the Website at issue in the instant action.

42.    Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website that prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.    Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Website.

44.    The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

24

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

47.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## Trespass Violations

49.     Plaintiff utilizes his computer to access websites, such as the Website.

50.     Plaintiff uses his computer as a method of conveyance of his personal information. Plaintiff thus stores his personal information and retains his browsing history on his computer.

51.     When a user accesses the Website, Defendant automatically places cookies and other information tracking and gathering software on the user's personal computer and hard drive without the user's advance consent or knowledge.

25

52. Although the Website does have a "Privacy Policy" linked from the bottom of its home page, Defendant does not inform the Website user that the user's personal information and browsing history are being collected and used for targeted marketing and advertising. Therefore, and because of his blindness, Plaintiff was unable to comprehend the Website and thus had no choice, and likewise no knowledge, of Defendant's automatic installation of cookies and other data and information tracking and gathering software on his computer and its hard drive and the collection of his browsing history and analytics.

53. Thus, through the Website, Defendant has committed a trespass against Plaintiff, since the Website places information tracking and gathering software on the Plaintiff's computer without Plaintiff's knowledge or consent.

## COUNT I – VIOLATION OF THE ADA

54. Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

55. Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56. Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendant's physical restaurants, order and purchase Defendant's food and beverage products also available for ordering and purchase in, from, and through the physical restaurants, arrange in-restaurant pickup and from-restaurant delivery of Defendant's

26

food and beverage products, purchase physical and electronic gift cards for use online and in the physical restaurants, submit an electronic contact form to get in contact with and/or be contacted by the physical restaurants, and sign up for a website account to receive exclusive offers, benefits, invitations, and discounts for use online and in the physical restaurants. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical restaurants. Further, the Website serves to augment Defendant's physical restaurants by providing the public information about the restaurants and by educating the public as to Defendant's available food and beverage products sold through the Website and in, from, and through the physical restaurants.

57.    Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, restaurants, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58.    Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, restaurants, privileges, advantages, or accommodations to individuals with disabilities, unless

27

the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, restaurants, privileges, advantages or accommodations."

59. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60. Defendant's Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61. Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to, and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in the physical restaurants in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

62. The Website was subsequently visited by Plaintiffs expert in February 2026, and the expert determined that many of the same access barriers that Plaintiff

28

had initially encountered, as well as numerous additional access barriers, existed. Despite being a defendant in prior ADA website accessibility lawsuits, one or more of which likely resulted in a confidential settlement agreement that obligated Defendant to fully remediate the Website, Defendant has made insufficient material changes or improvements to the Website to enable its full and equal use, and enjoyment by, and accessibility to, blind and visually disabled persons, such as Plaintiff. Also, although the Website appeared to have an "accessibility" statement linked from, and buried at the bottom of, its home page as well as a third-party provided (i.e., "UserWay") "accessibility" widget/plugin installed, that "accessibility" statement and "accessibility" widget/plugin, when activated and tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons, such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals. Defendant thus has failed to make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.

63.    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64.    There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65.    Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who require the assistance of screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication and thus violates the ADA.

71.    As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick-and-mortar restaurants, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with Defendant's Website and its physical restaurants.

72. Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the Defendant's policy to ensure persons with disabilities have full and equal access to, and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical restaurants through the Website.

b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical restaurants and becoming informed of, ordering, and purchasing Defendant's food and beverage

32

products, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical restaurants.

74.    Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility

33

coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

D. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

E. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

F. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

G. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

H. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the

34

Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

I.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

J.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

K.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

75.  Plaintiff re-alleges paragraphs 1 through 53 as if set forth fully herein.

76.  Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's Website, due to Defendant's employment of cookies and other information tracking

35

and gathering software and analytics, which are present on and throughout the Website.

77.    At all relevant times, Plaintiff did not consent to and was unaware that the Website was automatically placing the cookies and other information tracking and gathering software on his computer and its hard drive due to his blindness and his inability to fully and equally access and navigate the Website.

78.    Plaintiff did not consent to the automatic placement of cookies and other information tracking and gathering software on his computer and its hard drive; therefore, Defendant has committed a trespass against Plaintiff by placing such software on his computer and its hard drive without his knowledge or consent.

79.    By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass to chattel.

80.    Defendant's installation, operation, and execution of information tracking and gathering software on Plaintiff's computer have directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

81.    The Website has a "Privacy Policy" linked from the bottom of its home page that discusses the automatic gathering of information from, and the automatic placement of, cookies and other information gathering software on, computers of

36

users of the Website, such as Plaintiff. A copy of that "Privacy Policy" is attached hereto as Exhibit "B" and its contents are incorporated herein by reference.

82.    Defendant's trespass to chattel, nuisance, and interference has caused real and substantial damage to Plaintiff as follows:

a)    By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles, and internet connectivity);

b)    By infringing on Plaintiff's right to exclude others from his computer;

c)    By infringing on Plaintiff's right to determine, as the owner of his computer, which programs should be installed and operated on his computer;

d)    By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)    By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his computer without notice or consent.

83.    Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands a judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

37

DATED: February 27, 2026.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Road
Sunrise, FL 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email: rhannah@rhannahlaw.com

By: *s/ Roderick V. Hannah*
     RODERICK V. HANNAH
     Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
6355 N.W. 36th Street Suite 307
Virginia Gardens, FL 33166
T. 305/266-9780
305/269-8311 (Facsimile)
Email: Duranandassociates@gmail.com

By: *s/ Pelayo M. Duran*
     PELAYO M. DURAN
     Fla. Bar No. 0146595